UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

   v.

Chinedu Ihejiere

Criminal No. 19-cr-077-LM-1
Opinion No. 2021 DNH 142 P

**O R D E R**

The defendant, Chinedu Ihejiere, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). See doc. nos. 34 and 38. Ihejiere argues that his medical conditions—in particular his kidney transplant and subsequent immunosuppressant medications—give rise to an extraordinary and compelling reason for a sentence reduction because they place him at high risk of severe illness should he contract COVID-19. The government assents to Ihejiere's motion. See doc. no. 40. The court held an uncontested hearing via video on Ihejiere's motion on September 7, 2021. For the reasons explained below, Ihejiere's motion is granted.

**STANDARD OF REVIEW**

A court may grant a sentence reduction, otherwise known as "compassionate release," under 18 U.S.C. § 3582(c)(1)(A). That statute provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

1

whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    (i)    extraordinary and compelling reasons warrant such a reduction;

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Where a prisoner properly files a motion for compassionate release, the statute imposes two requirements before the court may grant his motion. First, there must be "extraordinary and compelling reasons" for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). At this step, the court has "'broad discretion to determine what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)' and may consider '<u>any</u>' of the defendant's reasons for release," regardless of whether those reasons are consistent with the Sentencing Commission's policy statement on compassionate release. United States v. Fields, ___ F. Supp. 3d ___, 2021 WL 3518832, at *6 (D.N.H. Aug. 9, 2021) (quoting United States v. Trenkler, No. CR 92-10369 WES, 2021 WL 1811652, at *7 (D. Mass. May 6, 2021)).[1] Second, the court must "consider[ ] the factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of showing

---

[1] The statute prohibits a court from considering rehabilitation alone. See 28 U.S.C. § 994(t).

he is entitled to a sentence reduction.  Trenkler, 2021 WL 1811652 at *7; United States v. Hilow, No. 15-CR-170-JD, 2020 WL 2851086, at *3 (D.N.H. June 2, 2020).

## BACKGROUND

Ihejiere pled guilty to Conspiracy to Commit Bank Fraud under 18 U.S.C. §§ 1349 and 1344, following a scheme where he defrauded individuals of over $69,000.  He has accepted responsibility for his crime and exhibited remorse.

On January 3, 2020, the court sentenced Ihejiere to 25 months' incarceration followed by three years of supervised release.  Ihejiere's self-surrender date was delayed as the Bureau of Prisons ("BOP") attempted to find space for him in an appropriate facility (given his medical conditions).  During this delay, the COVID-19 pandemic began.  Ihejiere began his period of incarceration at FMC Devens on June 30, 2020, and his release date is April 7, 2022.  Accounting for good time credit, he is eligible for home detention in approximately 4 months (on January 22, 2022) and has served 65 percent of his sentence.

Ihejiere has a lengthy history of criminal charges for fraudulent behavior.  However, before sentencing the probation officer found that Ihejiere made a satisfactory adjustment to supervision with no issues of non-compliance, "clearly demonstrated acceptance of responsibility for the offense," and was a low risk for recidivism.  Doc. no. 19.

While incarcerated, Ihejiere tested positive for COVID-19 and he reported "mild symptoms."  He is now fully vaccinated.  He has had no disciplinary

infractions. He complied with the law while on release prior to his incarceration and has had no disciplinary issues while in prison.

## DISCUSSION

As a threshold matter, BOP denied Ihejiere's request for a sentence reduction on July 19, 2021, so he has exhausted his administrative remedies and his motion is properly before the court. See 18 U.S.C. § 3582(c)(1)(A). The court now considers: (1) whether there are extraordinary and compelling reasons for a sentence reduction; and (2) whether early release would be consistent with applicable sentencing factors under § 3553(a). Id.

I.    Extraordinary and Compelling Reasons

In the context of the COVID-19 pandemic, courts have held that a generalized risk of infection by the virus is not, by itself, sufficient to constitute an extraordinary and compelling reason for a sentence reduction. See United States v. Ramirez, 459 F. Supp. 3d 333, 337-38 (D. Mass. 2020) (collecting cases). "On the other hand, a combination of health and age factors that put a prisoner at a substantially higher risk due to COVID-19 along with a documented risk of the disease in the facility where the defendant is incarcerated may demonstrate extraordinary and compelling reasons to reduce the prisoner's sentence." United States v. Bischoff, 460 F. Supp. 3d 122, 125 (D.N.H. 2020).

When determining whether a defendant is at a particularly high risk of experiencing a severe illness from COVID-19, courts have generally looked to the CDC guidelines. See, e.g., United States v. Patten, Crim. No. 18-cr-073-LM-1, 2021 WL 275444, at *3 (D.N.H. Jan. 27, 2021). Based on information known at this time, the CDC has identified certain underlying medical conditions that increase or may increase the risk of suffering a severe case of COVID-19.[2] The CDC states that persons who have had a solid organ transplant are more likely to get severely ill from COVID-19.[3] Additionally, persons with a weakened immune system from prolonged use of corticosteroids, persons who are obese, and persons who have hypertension can be more likely to become severely ill from COVID-19.[4]

Ihejiere suffers from all these conditions: solid organ transplant, weakened immune system, obesity, and hypertension. The government's medical expert, Dr. Muir, confirmed that, according to CDC recommendations, there is a high risk that Ihejiere will suffer adverse consequences if he contracts COVID-19.[5]

---

[2] CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 7, 2021).

[3] Id.

[4] Id.

[5] Even BOP acknowledged the severity of Ihejiere's conditions. In its denial of Ihejiere's release request, BOP wrote: "A review of your medical record indicates that you have a condition with an end-of-life trajectory; however, you do not have end-of-life indicators that would establish a prognosis of terminal. You have a medical history of a kidney transplant, hypertension, glaucoma, aneurysm (reported stable with annual neuro follow-ups), and peripheral vascular disease."

Courts have found that solid organ transplants are an extraordinary and compelling reason for release, even if a defendant has previously been infected with COVID-19 and is now vaccinated. For example, Judge Settle in the Western District of Washington released a vaccinated defendant who had contracted COVID-19 because his kidney transplant and associated immunosuppressant medication (along with other health factors) made him vulnerable to severe illness from COVID-19. See United States v. Sandoval, No. CR14-5105 BHS, 2021 WL 673566, at *5 (W.D. Wash. Feb. 22, 2021); see also United States v. Cosgrove, 454 F. Supp. 3d 1063, 1063 (W.D. Wash. 2020) (granting motion for compassionate release for a transplant recipient); United States v. Salley, No. CR 19-688, 2020 WL 7024253, at *11 (E.D. Pa. Nov. 30, 2020) (granting compassionate release to a pretrial detainee with a kidney transplant). Further, courts have granted compassionate release to partially vaccinated prisoners based on their particular medical vulnerabilities. See, e.g., United States v. Kafi, No. 17-20432, 2021 WL 2292319, at *1 (E.D. Mich. June 4, 2021) (releasing partially vaccinated defendant with type two diabetes, Hyperlipidemia, and neurocognitive disorders including dementia); United States v. Parish, No. CR 2:07-0578-RMG, 2021 WL 1152960, at *1 (D.S.C. Mar. 17, 2021) (releasing partially vaccinated defendant who had survived COVID-19 and suffered from diabetes, obesity, hypertension, atrial fibrillation, chronic kidney disease, and coronary artery disease).

Although Ihejiere has had COVID-19 and is fully vaccinated, Ihejiere argues that he should be treated as unvaccinated because many transplant recipients may

not get antibody protection from vaccination.[6] After two vaccine doses, "[f]orty-six percent of transplant patients have had no evidence whatsoever that they had an antibody response to the vaccine."[7] The fact that Ihejiere voluntarily agreed to be vaccinated is laudable and is evidence that he makes responsible decisions with respect to his own medical care and with respect to the safety of others around him.

Accordingly, the court finds that Ihejiere has shown an extraordinary and compelling reason for release because his medical conditions, in particular his kidney transplant and subsequent immunosuppressant medications, place him at high risk of severe illness should he contract COVID-19. The government agrees that Ihejiere has shown an extraordinary and compelling reason for release.

---

[6] Brian J. Boyarsky, et al., Antibody Response to 2-Dose SARS-CoV-2 mRNA Vaccine Series in Solid Organ Transplant Recipients, 325 JAMA 2204, 2206 (June 1, 2021) (finding that "a substantial proportion of transplant recipients likely remain at risk for COVID-19 after 2 doses of mRNA vaccine"), https://jamanetwork.com/journals/jama/fullarticle/2779852.

[7] Maria Godot, "Vaccination Against COVID 'Does Not Mean Immunity' For People With Organ Transplants," NPR (March 7, 2021), https://www.npr.org/sections/health-shots/2021/05/07/994260770/vaccination-against-covid-does-not-mean-immunity-for-people-with-organ-transplan#:~:text=COVID%20Vaccines%20May%20Not%20Be,%3A%20Shots%20%2D%20Health%20News%20%3A%20NPR&text=Hourly%20News-,COVID%20Vaccines%20May%20Not%20Be%20Protective%20For%20Organ%20Transplant%20Recipients,something%20akin%20to%20normal%20life.https://www.westlaw.com/Document/N41D903007E3111DBBEB6A645BDDA87CA/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=da3.0https://www.westlaw.com/Document/N41D903007E3111DBBEB6A645BDDA87CA/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=da3.0

## II. <u>Sentencing Factors</u>

The court must next consider whether a sentence reduction would be consistent with applicable sentencing factors outlined in 18 U.S.C. § 3553(a).  <u>See</u> 18 U.S.C. § 3582(c)(1)(A).  The applicable § 3553(a) factors include the nature and circumstances of a defendant's offense, their personal history and characteristics, and considerations such as promoting respect for the law, providing just punishment, affording adequate deterrence, providing protection to the public from further crimes of the defendant, and providing the defendant with needed training, medical care, and other treatment in the most effective way.  18 U.S.C. § 3553(a)(1)-(2).

Ihejiere's offense was serious, but it did not involve physical harm or threats of harm to others.  He has accepted responsibility for his crime and has exhibited remorse.  He complied with the law while on pretrial release and has had no infractions while incarcerated.  Based on his recent history and excellent familial support, Ihejiere is not at a high risk of recidivism.  Although his criminal history shows repeated instances of financial fraud, Ihejiere has now served the longest sentence of his life and faces a large restitution obligation.  He has served 65 percent of his sentence after accounting for good time credit.  He is eligible for home detention in only four months.  For all these reasons, Ihejiere's release is not inconsistent with the sentencing factors.  <u>See</u> 18 U.S.C. § 3553(a)(1)-(2).

Moreover, Ihejiere will require continued long-term medical care regardless of whether he contracts COVID-19.  One of the sentencing factors, providing a defendant "with needed medical care . . . in the most effective manner," weighs heavily in favor of release.  18 U.S.C. 3553(a)((2)(D).  If released, Ihejiere will be able to continue care with the excellent Massachusetts facilities that successfully performed his kidney transplant.  Id.  Further, once Ihejiere is released he can begin to pay back the large restitution amount that he owes for his crime.  18 U.S.C. §3553(a)(7) (courts should consider at sentencing "the need to provide restitution to any victims").

Reducing Ihejiere's sentence to time served adequately meets the goals of sentencing given the proportion of his sentence he has already served, his recent compliance with the law and good behavior while incarcerated, and the serious nature of his medical conditions.

## CONCLUSION

For the reasons above and the reasons stated in the government's concurrence, Ihejiere's assented-to motion for compassionate release (doc. nos. 34, 38) is granted as follows:

1. Ihejiere's sentence will be reduced to time served.

2. Ihejiere will be placed on supervised release for a term of three years.

3. During the term of supervised release, Ihejiere shall be subject to the Conditions of Release as set forth in Appendix A.

4. Ihejiere will serve approximately the first seven months of his supervised release on home confinement until April 7, 2022, which is equivalent to what his discharge date would have been from BOP.

5. BOP shall release Ihejiere immediately following processing.

6. The court will issue an amended criminal judgment.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 9, 2021

cc:   Counsel of Record

**United States of America v. Chinedu Ihejiere, 19-cr-077-LM-1**

**APPENDIX A**

CONDITIONS OF RELEASE

While under supervision, the defendant must comply with the following mandatory conditions:

1. The defendant must not commit another federal, state, or local crime.

2. The defendant must not unlawfully possess a controlled substance.

3. The defendant must refrain from any unlawful use of a controlled substance.

4. The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

5. The defendant must cooperate in the collection of DNA as directed by the probation officer.

While under supervision, the defendant must also comply with the following standard conditions of supervision that have been adopted by this court:

1. The defendant must report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of his release from imprisonment, unless the probation officer instructs him to report to a different probation office or within a different time frame.

2. After initially reporting to the probation officer, the defendant will receive instructions from the court or probation officer about how and when he must report to the probation officer, and he must report to the probation officer as instructed.

3. The defendant must not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the court or probation officer.

4. The defendant must answer truthfully the questions asked by his probation officer.

5. The defendant must live at a place approved by the probation officer. If he plans to change where he lives or anything about his living arrangements

(such as the people he lives with), he must notify the probation officer at least 10 days before the change.  If notifying the probation officer in advance is not possible due to unanticipated circumstances, he must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. The defendant must allow the probation officer to visit him at any time at his home or elsewhere, and he must permit the probation officer to take any items prohibited by the conditions of his supervision that the probation officer observes in plain view.

7. The defendant must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses him from doing so.  If he does not have full-time employment he must try to find full-time employment, unless the probation officer excuses him from doing so.  If he plans to change where he works or anything about his work (such as his position or his job responsibilities), he must notify the probation officer at least 10 days before the change.  If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, he must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. The defendant must not communicate or interact with someone he knows is engaged in criminal activity.  If he knows someone has been convicted of a felony, he must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If the defendant is arrested or questioned by a law enforcement officer, he must tell the probation officer within 72 hours.

10. The defendant must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e, anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. The defendant must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require him to notify the person about the risk and the defendant must comply with that instruction.  The probation officer may contact the person and confirm that the defendant has notified the person about the risk.

13. The defendant must follow the instructions of the probation officer related to the conditions of supervision.

In addition, the defendant must comply with the following special conditions:

1. Upon release, the defendant must obtain transportation directly from the prison to his approved residence. The defendant must eliminate or minimize any stops during that transport.

2. The defendant is restricted to his residence at all times until April 7, 2022, except for: employment; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer. During this time period, the defendant's location will be monitored at the discretion of his probation officer. The probation officer will determine what type of technology to use to monitor the defendant. The defendant must follow the rules and regulations of any monitoring program. The defendant must pay for the cost of the program to the extent he is able, as determined by the probation officer.

3. The defendant must not use or possess any controlled substances without a valid prescription. If the defendant does have a valid prescription, he must disclose the prescription information to the probation officer and follow the instructions on the prescription.

4. The defendant must submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that the defendant has violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.